## Miller Rubber Company v. Gould.

*Geisenberger & Geisenberger*, for plaintiff.

*J. Andrew Frantz*, for defendant.

GROFF, J., March 24, 1928.—This is a suit in *assumpsit* brought by the Miller Rubber Company of New York v. James W. Gould, surety (which term we use for reasons hereinafter explained), to recover the sum of $2076.09, with interest thereon from Sept. 15, 1927.

The goods, for the value of which suit is brought, were sold by the plaintiff to one J. Z. Brubaker, of Manheim, Pa., after James W. Gould, the defendant, had signed an agreement, of which the following are the principal parts, so far as this controversy is concerned, and transmitted the same to the plaintiffs:

"To The Miller Rubber Company of New York:

"In consideration of your selling goods, wares and merchandise to J. Z. Brubaker, Manheim, Pa., and especially in consideration of the credit which you may hereafter extend to J. Z. Brubaker, Manheim, Pa., we I hereby, jointly and severally guarantee the payment when due, of any and all present or future indebtedness to you now owing, or hereafter incurred, by J. Z. Brubaker, Manheim, Pa., on account of goods, wares and merchandise sold by you to the said J. Z. Brubaker, Manheim, Pa., whether said indebtedness is evidence by book account, negotiable instrument or instruments, or in any other

manner, not exceeding an indebtedness of Three Thousand Dollars ($3000) at any time, for which sum this is an absolute and continuing guarantee, to continue until you shall receive from ~us~ me a notice in writing of the revocation of same, but such revocation shall not in any way relieve ~us~ me from liability for any indebtedness contracted prior to the service of such notice.

"~We~ I hereby, upon the considerations aforesaid, waive notice of the acceptance of this guarantee, and of credit given or to be given to said J. Z. Brubaker, Manheim, Pa., and waive demand for payment thereof upon the purchaser, and waive notice of default in payment of any of said indebtedness, and agree that this guaranty shall not be affected by your taking or holding security or collateral for such payment, and consent that such indebtedness, or any portion thereof, may, without notice to ~us~ me, be extended from time to time before or after the same becomes due, and that such extension or extensions may be granted by you either verbially or by the acceptance of a negotiable instrument, or other evidence of debt, and agree that the term payment wherever used in this guaranty is understood and agreed to mean the payment in money and your acceptance of a negotiable instrument or instruments as payment shall for the purposes of this guaranty be considered merely an extension in the time of payment, and that such extensions shall not release or affect ~our~ my liability hereunder, and agree that the terms, waivers and agreements herein contained shall be strictly construed against ~us~, me and in your favor, so as to create and maintain, irrespective of anything you may do or cause to be done, a liability on the ~my~ part which shall never be affected, waived, or released, except by the actual payment in money to you of all indebtedness covered by this guaranty."

To the statement of claim defendant filed an affidavit of defense under section 20 of the Practice Act of May 14, 1915, P. L. 486, raising a question of law, without answering the averments of fact, in which he avers that the contract above, in part recited, is a contract of guaranty and not one of suretyship. That is the question for the court to determine.

If the defendant's contention is right, then the plaintiffs cannot sustain this action. If the plaintiffs' contention is right, then, under the law, the paper above referred to is a suretyship, and the action in the form it was brought can be maintained presently against James W. Gould, the defendant.

"A surety is primarily liable upon his covenant, and may be proceeded against without recourse to him for whom he has engaged to answer:" Supplee *v.* Herrman, 16 Pa. Superior Ct. 45.

We find the Act of July 24, 1913, P. L. 971, provides as follows:

"That every written agreement hereafter made by one person to answer for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: 'This is not intended to be a contract of suretyship,' or unless each portion of such agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: 'This portion of the agreement is not intended to impose the liability of suretyship.'

"Section 2. This act shall not be construed as changing the rules of law heretofore existing respecting the disability of any person to bind himself or herself by a contract of suretyship, or respecting the admissibility of evidence to alter, add to, or vary a written contract."

An examination of the agreement above referred to shows that it does not contain the words which would make it a guaranty and not a suretyship, viz.: "This is not intended to be a contract of suretyship," nor does any part of it

contain these words, "This portion of the agreement is not intended to impose the liability of suretyship."

Therefore, we think that it comes directly within the provision of the act just quoted and is a suretyship with the right of the plaintiff to proceed directly against the surety.

In Miners State Bank *v.* Auksztokalnis, Administrator of Michael Rosenberg, deceased, 283 Pa. 18, it appears that on Jan. 5, 1920, on the back of a promissory note payable on demand for $5000 the defendant's decedent had signed the following: "For value received, I do hereby guarantee payment of the Note 5," and signed his name. It was contended in that case that the endorsement was a guarantee and not a suretyship, and the court held in such case the Act of July 24, 1913, P. L. 971, applies, and the endorser cannot be treated as though only a general guarantor, in the absence of any words in the endorsement necessary to make the liability assumed other than that of a surety.

And in Paper House of Pennsylvania *v.* Frederick, 6 D. & C. 728, it appears that on April 19, 1923, the defendant was a general manager of the Allentown Printing and Publishing Company, a corporation. He forwarded the following telegram to plaintiff:

"Directors meeting prevented call us nine thirty long distance we want to make contract for weekly shipments of paper I personally guarantee thirty day payment and we want to have a carload shipped at once phone without fail for instructions."

In pursuance thereof, plaintiff shipped a quantity of paper to the Allentown Printing and Publishing Company, which has since become insolvent and for which a receiver was appointed by the court. Suit was brought against the surety, and an affidavit of defense was filed raising the same question of law that it raised here. It was held by the court:

1. That an averment that plaintiff had used due diligence to recover from principal was not necessary.

2. That it was unnecessary to allege that defendant had accepted the guaranty; and

3. That the position that the statement did not reveal a consideration for the guaranty was untenable.

And, again, we find in the case of Bassick Co. *v.* Bright, 8 D. & C. 45, where a suit was brought against a surety who had guaranteed in writing an account for the goods to be sold to a corporation of which he was president, with a guaranty in writing using the word "guarantee" instead of "surety," it was held that he, the "guarantor," becomes a "surety" under the Act of July 24, 1913, P. L. 971, unless the writing contains in substance the words, "This is not intended to be a contract of suretyship."

We, therefore, conclude, after a careful consideration of the Act of July 24, 1913, P. L. 971, and the cases decided thereunder, together with the suretyship contract submitted to us, that the agreement constitutes a "suretyship" and not a "guaranty," and that there is a sufficient consideration on which to base the action, and that there is no virtue in the affidavit of defense.

On a further careful examination of the other parts of the affidavit of defense, and after a careful examination of the cases cited in defendant's brief, we are convinced that there is nothing in defendant's contention, and we decide the questions of law raised in the affidavit of defense against the defendant and direct that he file a supplemental affidavit of defense to the averment of facts of the statement within fifteen days from the filing of this opinion.                    From George Ross Eshleman, Lancaster, Pa.